UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

CSX TRANSPORTATION, INC.,
a Virginia corporation,

    Plaintiff,

v.

APEX DIRECTIONAL DRILLING, LLC,
an Oregon limited liability company,

    Defendant.

Case No. 3:14-cv-00470-HA

OPINION AND ORDER

APEX DIRECTIONAL DRILLING, LLC,
an Oregon limited liability company

    Third-Party Plaintiff,

v.

CONTINENTAL CONSTRUCTION, INC.,
a Pennsylvania corporation,

    Third-Party Defendant.

HAGGERTY, District Judge:

1 - OPINION AND ORDER

On March 21, 2014, plaintiff CSX Transportation, Inc. (CSX), filed a complaint against defendant Apex Directional Drilling, LLC (Apex), alleging negligence related to damage caused by the overflow of excavation material during the construction of a gravity sewer system in Pennsylvania. On May 2, 2014, Apex filed a Third-Party Complaint [8] against third-party defendant, Continental Construction, Inc. (Continental). The Third-Party Complaint alleges that it was actually Continental's negligence that caused the overflow. On June 3, 2014, Continental filed a Motion to Dismiss or Stay Third-Party Complaint [15], asserting lack of personal jurisdiction. Because the parties indicated that a request to transfer venue was imminent, the court deferred ruling on the Motion to Dismiss until it received briefing on the transfer issue. On August 1, 2014, Apex field a Motion to Change or Transfer Venue [22]. On August 8, 2014, the action was stayed pending mediation. On October 20, 2014, the stay lifted, and on November 11, 2014, Apex filed a Motion to Compel Mediation and for Abatement [30]. For the following reasons, Continental's Motion to Dismiss [15] is granted; Apex's Motion to Change or Transfer Venue [22] is granted; and Apex's Motion to Compel Mediation and for Abatement [30] is denied.

## FACTUAL BACKGROUND

Apex is an Oregon limited liability company with its principal place of business in Portland, Oregon. Continental is a Pennsylvania corporation with its registered office and principal place of business in Ridgeway, Pennsylvania. During 2011, both companies were involved in a construction project in Pennsylvania.

Greenland Construction, Inc. (Greenland), a Pennsylvania corporation, was awarded a contract by the Mon Valley Sewage Authority to construct a gravity sewer system in or near the

City of Monessen, Pennsylvania. Greenland entered into a subcontract agreement with Apex to provide directional drilling services. In 2011, Apex contacted Continental to discuss whether Continental could provide equipment and labor for the project. Apex and Continental entered into an oral agreement in which Continental would assist with portions of Apex's work on the project in exchange for payment.

During Continental's performance under the agreement, it transported materials excavated from the project site at the direction of Apex. Continental dumped the excavated material at a site in the City of Monessen. On September 1, 2011, the excavated material overflowed its embankments resulting in damages to the surrounding properties and fines for both Apex and Continental.

On October 19, 2012, Continental filed a lawsuit in the Court of Common Pleas for Westmoreland County, Pennsylvania against Apex, Greenland, and their respective sureties. The complaint demands payment of unpaid invoices for the work completed on the project as well as the fines incurred by Continental while working on Apex's behalf. Apex's Answer to Continental's Amended Complaint included a counterclaim against Continental for breach of contract, negligence, and indemnification and contribution. Each counterclaim count is related to the overflow incident in Pennsylvania.

On March 21, 2014, CSX, a Virginia corporation, filed this lawsuit against Apex. The Complaint [1] alleges that, during the drilling project in Pennsylvania, Apex's negligence caused excavation debris to flow on CSX's property resulting in damage. On May 2, 2014, Apex filed a Third- Party Complaint [8] against Continental, asserting that Apex is entitled to full and complete indemnity based on Continental's negligence.

## ANALYSIS

### A. Third-Party Defendant's Motion to Dismiss

Continental asserts that Apex's Third-Party Complaint must be dismissed because this court lacks personal jurisdiction. Apex bears the burden of establishing that this court has personal jurisdiction over Continental. *Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.*, 103 F.3d 888, 893 (9th Cir. 1996). However, a plaintiff need only make a prima facie showing of facts that support the exercise of jurisdiction over a defendant. *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1168 (9th Cir. 2006).

Personal jurisdiction over a non-resident defendant is tested under a two-prong analysis. The exercise of jurisdiction must: (1) satisfy the requirements of the long-arm statute of the state in which the district court sits; and (2) comport with the principles of federal due process. *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995). Oregon Rule of Civil Procedure (ORCP) 4(B)-(K) provides specific bases for personal jurisdiction and subsection (L) extends jurisdiction to the limits of due process under the United States Constitution. *Nike, Inc. v. Spencer*, 707 P.2d 589, 591 (Or. App. 1985); *see* ORCP 4. Therefore, Apex need only satisfy the second prong of the personal jurisdiction test.

The Due Process Clause of the U.S. Constitution protects persons from being subject to the binding judgments of a forum with which they have "established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). Due process requires that a defendant have "minimum contacts with the forum state such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice." *Decker Coal Co. v.*

*Commonwealth Edison Co.*, 805 F.2d 834, 839 (9th Cir. 1986) (citing *Int'l Shoe Co.*, 326 U.S. at 316). A court may exercise either (1) general jurisdiction or (2) specific jurisdiction over a nonresident defendant. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (citation omitted).

   1. General Jurisdiction

For a defendant to be subject to general personal jurisdiction, the defendant must have such "continuous and systematic contacts with the forum that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Reebok Int'l Ltd. v. McLaughlin*, 49 F.3d 1387, 1391 (9th Cir. 1995) (citation omitted). The standard for general jurisdiction is high, requiring that contacts in the forum "approximate physical presence." *Tuazon*, 433 F.3d at 1169 (citation omitted). Unless the defendant can be deemed "present" within the forum for all purposes, general jurisdiction is not appropriate. *Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007).

In this case, Continental's contacts with the State of Oregon arise solely from the matter at issue. The negotiations and oral agreement between Apex and Continental were initiated by Apex over the phone. Continental agreed to perform work in Pennsylvania and the contracted work was completed in Pennsylvania. Continental has no other business contacts in Oregon; is not registered to do business in Oregon; has no agent for service of process in Oregon; has never advertised, solicited, recruited, or performed work in Oregon; and has not had an office, employees, shareholders, or property in Oregon. Marzella Decl. [16] at ¶ 4. Therefore, Continental's sole contact with the State of Oregon is the oral contract with Apex. Because this single contract does not approximate physical presence in the State, it is clear that general jurisdiction is inappropriate.

2. Specific Jurisdiction

Even in instances when a nonresident party is not subject to general jurisdiction in the forum state, it may be subject to specific jurisdiction. Specific jurisdiction exists where:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (citation omitted). If the plaintiff meets the first and second elements, the burden shifts to the defendant to present a compelling case that the exercise of jurisdiction would be unreasonable. *Id.* (citations omitted). However, if the plaintiff fails at the first or second step, then the jurisdictional inquiry ends and the defendant must be dismissed from the case. *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008).

To establish the first prong for specific jurisdiction, Apex must demonstrate that Continental either purposefully availed itself of the privilege of conducting activities in the forum, or purposefully directed its activities at the forum. *Washington Shoe Co.*, 704 F.3d at 672. The purposeful availment analysis is generally used in contract suits, while the purposeful direction analysis is generally used in tort cases. *Id.* at 672-73. However, the purposeful direction analysis applies only to intentional torts - not to negligence claims such as those alleged here. *Holland America Line Inc. v. Wartsila North America, Inc.*, 485 F.3d 450, 460 (9th Cir.

2007). Therefore, this court finds that purposeful availment is the proper analytical lense through which to view personal jurisdiction in this case.

Jurisdiction under the purposeful availment analysis requires that "there be some act by which the defendant purposefully avails itself to the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp.*, 471 U.S. at 475. In other words, personal jurisdiction over nonresidents is a quid pro quo in which the state provides services to the defendant. Purposeful availment is generally demonstrated through evidence of defendant's actions in the forum state, such as executing or performing a contract there, which thereby invoke the benefits and protections of the forum's laws. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

In this case, Continental entered into an oral agreement with an Oregon company. One may argue that by contracting with an Oregon company, Continental took advantage of Oregon's legal protections. However, the existence of such a contract is not enough to demonstrate purposeful availment. *Burger King Corp.*, 471 U.S. at 478 (one contract alone does not establish that a defendant has purposefully availed himself to the privileges in the forum state); *Doe v. Unocal Corp.*, 248 F.3d 915, 924 (9th Cir. 2001) ("an individual's contract with an out-of-state party alone [cannot] automatically establish sufficient minimum contacts to support personal jurisdiction." (internal quotations omitted)). In *Burger King*, the Supreme Court explained:

> [W]e have emphasized the need for a "highly realistic" approach that recognizes that "contract" is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." It is these factors-prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing-that must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum.

7 - OPINION AND ORDER

*Burger King*, 471 U.S. at 478–79 (citations omitted). Under this standard, Continental's contractual relations with Apex do not constitute purposeful availment of the benefits and protections of Oregon law. Evidence has been presented that Apex was the party that initially reached out to Continental and that the contract was negotiated entirely over the phone. The contemplated future consequences of that contract were solely that Continental would assist Apex in a single construction project in Pennsylvania. The actual course of dealing conformed with that contract, as Continental performed work for Apex in Pennsylvania only. Such minimal contacts with the forum state fail to satisfy the Ninth Circuit's purposeful availment standards. *HK China Group, Inc v. Beijing United Auto. & Motorcycle Mfg. Corp.*, 417 Fed. Appx. 664, 666 (9th Cir. 2011) (holding that Chinese corporation did not purposefully avail itself to California despite entering contract with California corporation, because contract did not contemplate future consequences in California and did not contain a choice of law provision for California law).

Given that Apex cannot establish that Continental purposefully availed itself of the Oregon forum, this court need not proceed to the remaining inquiries under the Ninth Circuit's specific jurisdiction test. *Boschetto*, 539 F.3d at 1016 ("if the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed"). Third-party plaintiffs have thus failed to demonstrate that either general or specific personal jurisdiction exists over Continental.

    3.    Jurisdictional Discovery

Apex requests that the court allow limited jurisdictional discovery to determine whether Continental is subject to personal jurisdiction in this court. "'Where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of

specific denials made by the defendants, the Court need not permit even limited discovery.'" *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) (quoting *Terracom v. Valley Nat. Bank*, 49 F.3d 555, 562 (9th Cir.1995)) (internal alterations omitted). In the Third-Party Complaint [8], Apex fails to even allege that Continental is subject to personal jurisdiction in Oregon. Similarly, in Apex's Response to Continental's Motion to Dismiss or Stay Third-Party Complaint [17], it does not offer any argument or evidence that addresses Continental's contacts with Oregon. Instead, Apex merely argues that Continental knew that Apex was an Oregon company earlier than Continental suggested in its briefing. Apex based this argument on the invoices that Continental mailed to Apex in Oregon. Regardless of when Continental knew that it was contracting with an Oregon company, a single contract cannot alone support personal jurisdiction in this court. *Burger King Corp.*, 471 U.S. at 478. Apex presents no facts that suggest that Continental has sufficient contacts with the State of Oregon, such that it is subject to jurisdiction in this court. Moreover, the action will be transferred to the Western District of Pennsylvania, making any discovery in this district irrelevant. Therefore, Apex's request for jurisdictional discovery is denied.

### B.     Defendant's Motion to Transfer

The parties agree that a motion to transfer is governed by 28 U.S.C. § 1404(a), which provides, "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Under this statute, "the district court has discretion to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211

9 - OPINION AND ORDER

F.3d 495, 498 (9th Cir. 2000) (quotations omitted). The court is permitted to consider several factors, including:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Id.* at 498-99 (citation omitted). The court also considers factors related to public interest, including court congestion and local interest in a dispute. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947).

The factors in *Jones*, as applied to the facts of this case, indicate that a transfer is fair and convenient. This action is related to a construction project that was conducted exclusively in Pennsylvania. Many of the contracts that designated work for the project were signed in Pennsylvania. Both Greenland Construction and Continental, the other entities performing work on the project, are Pennsylvania businesses. Therefore, many of the witnesses for this litigation are located in Pennsylvania, and they could likely be compelled to testify in Pennsylvania. The property that was allegedly damaged, the focus of this lawsuit, is located in Pennsylvania. Additionally, Pennsylvania is the location of the investigation and remediation that followed the overflow. Therefore, access to sources of proof would be more convenient in Pennsylvania. Also, because the overflow happened in Pennsylvania, there is likely more local interest in this case there than in Oregon.

CSX argues that Oregon is its choice of forum, and the plaintiff's choice of forum should

rarely be disturbed. However, plaintiff's choice of forum carries less weight when the chosen forum is not plaintiff's home." *Home Indem. Co. v. Stimson Lumber Co.*, 229 F. Supp. 2d 1075, 1085 (D. Or. 2001) (citation omitted). In this case, CSX is a Virginia corporation with minimal, if any, contacts in Oregon. The court finds that both parties share contacts in Pennsylvania and all of the operative facts occurred in Pennsylvania. Accordingly, the other *Jones* factors outweigh plaintiff's choice of forum in this case, and Apex's Motion to Change or Transfer Venue [22] is granted.

### C. Defendant's Motion to Compel Mediation and Stay

The parties are free and encouraged to participate in mediation if they choose, but this court, in its discretion, will not enter an order to do so. Therefore, Apex's Motion to Compel Mediation and for Abatement [30] is denied.

## CONCLUSION

Based on the foregoing reasons, third-party defendant's Motion to Dismiss or Stay Third-Party Complaint [15] is GRANTED. Defendant's Motion to Change or Transfer Venue [22] is GRANTED. Defendant's Motion to Compel Mediation and for Abatement [30] is DENIED.

IT IS SO ORDERED.

DATED this 18 day of November, 2014.

Ancer L. Haggerty
United States District Judge