# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CSX TRANSPORTATION INC., | ) |
| Plaintiff, | ) |
| v. | ) |
| APEX DIRECTIONAL DRILLING, LLC, | ) Civil Action No. 14-290E |
| Defendant and Third Party Plaintiff, | ) |
| | ) Judge Cathy Bissoon |
| v. | ) |
| CONTINENTAL CONSTRUCTION INC., | ) |
| Third Party Defendant. | ) |

## MEMORANDUM AND ORDER

### I. MEMORANDUM

Pending before the Court is a Motion to Dismiss and/or Stay (Doc. 41) filed by Continental Construction Inc. ("Continental," or "Third Party Defendant"), pursuant to Rule 12 of the Federal Rules of Civil Procedure and *Colorado River*. Continental requests that this Court abstain from conducting further proceedings regarding the January 12, 2015, Amended Third Party Complaint (Doc. 37) filed by Apex Directional Drilling, LLC ("Apex," or "Third Party Plaintiff"). Therein, Apex asserts claims for breach of contract and negligence under Pennsylvania state law. This Court has subject-matter jurisdiction over Apex's claims pursuant to 28 U.S.C. §§ 1332(a) (diversity of citizenship). For the reasons that follow, Continental's motion will be denied.

On March 21, 2014, CSX Transportation, Inc. ("CSX") filed a Complaint (Doc. 1) in this Court against Apex. The claims contained therein arose from circumstances surrounding the construction of a "gravity sewer system" in Monessen, Pennsylvania. In 2011, the Mon Valley Sewer Authority awarded a contract to build said sewer system to Greenland Construction, Inc. ("Greenland"). (Doc. 32 at 2; Doc. 37 at ¶ 7; Doc. 42 at 2; Doc. 46 at 1). Greenland contracted with Apex for directional drilling services. (Doc. 32 at 2; Doc. 37 at ¶ 8; Doc. 42 at 2; Doc. 46 at 1). Apex subsequently contracted with Continental to dispose of material excavated during the drilling process. (Doc. 32 at 3; Doc. 37 at ¶¶ 9, 11; Doc. 42 at 2-3; Doc. 46 at 2). Continental removed the excavated material to a site owned by the City of Monessen. (Doc. 32 at 3; Doc. 37 at ¶¶ 10, 13; Doc. 42 at 3; Doc. 46 at 2). On or about September 1, 2011, inclement weather caused excavated materials to breach a containment area and flow down a hillside onto property and rail lines owned by CSX. (Doc. 32 at 3; Doc. 37 at ¶ 14; Doc. 42 at 3; Doc. 46 at 2). Both Apex and Continental were subject to fines by the Pennsylvania Department of Environmental Protection. (Doc. 32 at 3; Doc. 37 at ¶ 28). Apex contributed to remediation efforts on CSX property.

On October 19, 2012, Continental filed suit in the Court of Common Pleas for Westmoreland County, Pennsylvania, against Apex, Greenland and their respective sureties ("the Sureties") for unpaid invoices and fines incurred performing services on Apex's behalf. (Doc. 32 at 3). Apex responded with a counterclaim seeking damages for breach of contract, negligence, and indemnification and contribution. (Doc. 32 at 3).

On March 21, 2014, CSX filed the present federal action, and on May 2, 2014, Apex filed a Third Party Complaint (Doc. 8) against Continental. (Doc. 32 at 3). Apex's Amended Third Party Complaint followed on January 12, 2015. Continental subsequently filed its Motion to

2

Dismiss and/or Stay on March 13, 2015. Apex filed its Response on April 2, 2015. (Doc. 45). The matter is fully briefed (*see* Docs. 42 & 46) and is ripe for disposition.

"It is axiomatic that federal courts have a virtually unflagging obligation . . . to exercise the jurisdiction given them by Congress." Ryan v. Johnson, 115 F.3d 193, 195 (3d Cir. 1997) (all cited and quoted sources omitted, now and hereafter, within). Yet, Continental would have this Court refrain from exercising its jurisdiction over Apex's third-party claims, because Apex previously filed a substantially similar counterclaim in a pending state court action. The duplicative nature of the filings notwithstanding, the Court of Appeals for the Third Circuit has established that "the pendency of an action in . . . state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction." Id. Abstention must be justified by more than the desire to avoid duplicative litigation. Spring City Corp. v. American Bldgs. Co., 193 F.3d 165, 171-72 (3d Cir. 1999). *Exceptional* circumstances are required for a federal court to surrender its jurisdiction. Id. at 172 (emphasis added).

District courts apply a two-part test for determining whether to abstain. First, the movant must demonstrate that the federal and state proceedings are "parallel." Golden Gate Nat. Sr. Care, LLC v. Minich ex rel. Estate of Shaffer, -- Fed. App'x --, 2015 WL 6111426 at *1 (3d Cir. Oct. 16, 2015). Second, the Court conducts a six-factor balancing test, "heavily weighted in favor of the exercise of jurisdiction." Id.

As to the first element, state and federal proceedings are "parallel" when they involve "the same parties and substantially identical claims, raising nearly identical allegations and issues," and seeking the same remedies. Golden Gate, 2015 WL 6111426 at *2. While these standards appear satisfied with respect to the claims and allegations between Apex and

3

Continental, the state court action also encompasses claims against other parties, Greenland and the Sureties, and this federal action, the claims of CSX. *See* discussions *supra*.

The Court need not resolve the parallelism-issue, however, where (as here) the request for abstention fails under the balancing-test. *See* Golden Gate at *2 (holding same). In applying the balancing-test, the Court must remain mindful that "[t]he general rule regarding simultaneous litigation of similar issues in both state and federal courts is that both actions may proceed until one has come to judgment, at which point that judgment may create a *res judicata* or collateral estoppel effect on the other action." Ryan, 115 F.3d at 195. The circumstances warranting abstention are "extremely limited," and "only the clearest of justifications" will suffice. Id. at 195-96.

The relevant factors include: "(1) [in an *in rem* case,] which court first assumed jurisdiction over [the] property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties." Golden Gate, 2015 WL 6111426 at *2. In reviewing theese factors, the Court must "bear[] in mind that it should place a thumb on the scales in favor of granting jurisdiction." Id. Continental addresses each factor only summarily. (Doc. 42 at 7). The Court will analyze each of Continental's arguments, in turn.

It is undisputed that the first factor is of no import here, as neither the state nor federal action involves the exercise of *in rem* jurisdiction. The second factor does not counsel if favor of abstention, either; Continental readily admits that the federal forum is not inconvenient. (Doc. 42 at 7). As to the third factor, Continental states only that the actions "would produce duplicative, piecemeal litigation," because both courts would handle "the same central matter."

(Doc. 42 at 7). This argument, alone, is unavailing. The Court of Appeals for the Third Circuit has established that there must be a strongly articulated federal policy in favor of trying a particular claim in state court in order to justify abstention in the name of avoidance of piecemeal litigation. Ryan, 115 F.3d at 197-98. Continental identifies no such policy here, and judicial economy is not, in itself, an exceptional circumstance justifying abstention. Spring City, 193 F.3d at 171-72.

As required by the fourth element, the Court acknowledges that jurisdiction first was exercised by the state court; yet, this fact also is not enough to establish exceptional circumstances. In arguing that the fifth element supports abstention, Continental states that all of Apex's claims fall under state law, and only the federal court's "diversity jurisdiction brings the matter to this forum." (Doc. 42 at 7). Yet, this is exactly the purpose of diversity jurisdiction, and the mere presence of "garden-variety state law issues" does not warrant abstention. Ryan, 115 F.3d at 198. There must be a manifestation of congressional intent to divest the district court of jurisdiction. Id. at 199. Continental identifies no such manifestation, and it likewise has failed to show that Pennsylvania law regarding breach of contract and/or negligence is "so intricate and unsettled" that deference to the state courts is more appropriate. Id. at 200. Therefore, no exceptional circumstances have been established under the fifth element. Lastly, Continental asserts that the state court will adequately protect the interests of all the parties. However, the sixth element "is generally a one-way ratchet, serving only to weigh *against* abstention where a state court is incapable of protecting a party's interests." Golden Gate, 2015 WL 6111426 at *4. In a case such as the present, the sixth element is inapposite. Id.

Given the strong presumptions in favor of exercising jurisdiction, and Continental's failure to demonstrate exceptional circumstances warranting abstention, the Court will deny

Continental's Motion to Dismiss and/or Stay.  Accordingly, the Court hereby enters the following:

## II.  ORDER

The Third Party Defendant's Motion to Dismiss and/or Stay (**Doc. 41**) is **DENIED**. Consistent with Federal Rule 12(a)(4)(A), the Third Party Defendant's answer is due by **December 29, 2015**.

IT IS SO ORDERED.

December 15, 2015                                s\Cathy Bissoon
                                                 Cathy Bissoon
                                                 United States District Judge

cc (via ECF email notification):

All Counsel of Record